IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-03199-PAB-MJW

JOHN M. McDONALD,

      Plaintiff,

v.

SCHOOL DISTRICT NO. 1 IN THE COUNTY OF DENVER AND STATE OF
COLORADO,
ELDRIDGE GREER, and
NORMA GIRON,

      Defendants.

_____

**ORDER**
_____

      This matter is before the Court on the Motion to Dismiss [Docket No. 25] and the

Motion for Summary Judgment [Docket No. 58] filed by defendants School District No.

1, in the City and County of Denver, State of Colorado (the "District"), Dr. Eldridge

Greer, and Norma Giron (collectively, "defendants").[1]  This Court has subject matter

jurisdiction over plaintiff's federal law claims pursuant to 28 U.S.C. § 1331 and

jurisdiction over plaintiff's state law claims pursuant to § 1367.

      Plaintiff claims that he suffered racial, gender, age, and retaliatory discrimination

during his employment as a social worker with the District.  Plaintiff accuses the District,

Fairview Elementary ("Fairview") principal Ms. Giron, and Department of Social Work

_____

      [1]On January 23, 2014, plaintiff voluntarily dismissed all claims against
defendants Marisol Ferrer and Melanie Haas.  Docket No. 14.  Thus, references to
"defendants" are to the District, Dr. Greer, and Ms. Giron, collectively, unless otherwise
indicated.

and Psychological Services manager Dr. Greer of engaging in discriminatory conduct from 2009 until the District's Board of Education (the "School Board") terminated his employment in January 2012.

On November 21, 2013, plaintiff filed this case.  Docket No. 1.  Plaintiff brings a race and sex discrimination claim against the District pursuant to Title VII of the Civil Rights Act, an age discrimination claim against the District pursuant to the Age Discrimination in Employment Act ("ADEA"), a First Amendment retaliation claim against defendants pursuant to 42 U.S.C.§ 1983,[2] a state law interference with contract and/or prospective business advantage claim against Dr. Greer and Ms. Giron, and a state law breach of contract claim against the District.  *Id.* at 17-20.

On March 17, 2014, defendants filed the present motion to dismiss, arguing, in part, that portions of plaintiff's Title VII, ADEA, and First Amendment claims are barred by the statute of limitations.  Docket No. 25 at 6, 8-9.  On November 10, 2014, defendants filed the present motion for summary judgment.  Docket No. 58.  Both motions are fully briefed and ripe for disposition.

## I.  MOTION TO DISMISS

### A.  Background[3]

From 1989 to 2012, plaintiff John McDonald was employed by the District as a

---

[2]Although not strictly styled as such, plaintiff's First Amendment claim appears to be based on a retaliation theory.  *See* Docket No. 1 at 19, ¶ 84.  Defendants construe plaintiff's First Amendment claim accordingly and plaintiff does not object.  *See* Docket No. 64 at 18-19.

[3]The following factual allegations are taken from plaintiff's complaint and are presumed true for purposes of resolving defendants' motion to dismiss.

social worker.  Plaintiff is an African American male who was over the age of 60 at all times relevant.  Plaintiff alleges that, as early as 2009, Dr. Greer determined that plaintiff "did not belong anywhere in DPS."  Docket No. 1 at 7, ¶ 31.  Plaintiff further alleges that his immediate supervisor at Fairview, Ms. Giron, documented and disciplined plaintiff for multiple minor infractions and encouraged members of the teaching staff to complain about plaintiff during the 2009-2010 school year.  *Id.* at 9, ¶ 42.  Before the start of the 2010-2011 school year, plaintiff was placed on a remediation plan, which plaintiff claims placed unreasonable demands upon him.  *Id.* at 15, ¶ 59.  Ms. Giron subsequently recommended plaintiff's dismissal.  *Id.* at 16, ¶ 61.  Upon hearing of Ms. Giron's recommendation, the principal of Place Bridge Academy ("Place Bridge") asked to have plaintiff assigned to her school, but the request was denied.  *Id.* at 16, ¶ 63.  On January 24, 2012, the District School Board terminated plaintiff's employment and the District placed a "do not rehire flag" on his personnel file.  *Id.* at 16, ¶¶ 63-65.

During his employment, plaintiff voiced concerns to Dr. Greer during department meetings and in other forums regarding the declining availability of social work services to families and students within the District.  *Id.* at 10-11, ¶¶ 44.  At all times relevant, plaintiff also voiced concerns to District administration and staff regarding the District's misuse of federal funds collected as a result of providing social work services to students and families.  *Id.* at 19, ¶ 82.

On April 27, 2012, plaintiff filed a Charge of Discrimination with the Equal Opportunity Employment Commission ("EEOC") alleging discrimination on the basis of

race, sex, and age. *Id.* at 3, ¶ 9. On August 23, 2013, plaintiff received a right to sue letter from the EEOC. *Id.* at 3, ¶ 10.

### B. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (alteration marks omitted ).

For purposes of resolving defendants' motion to dismiss, the Court considers only the allegations contained in plaintiff's complaint. *See Gee v. Pacheco*, 627 F.3d

1178, 1186 (10th Cir. 2010).

### C.  Title VII and ADEA Claims[4]

Defendants argue that plaintiff's Title VII and ADEA claims are limited to acts that occurred on or after July 2, 2011 – 300 days before plaintiff filed his charge of discrimination with the EEOC.  Docket No. 25 at 6.  "An employee wishing to challenge an employment practice under Title VII [and the ADEA] must first file a 'charge' of discrimination with the EEOC."  *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1163 (10th Cir. 2007); *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005) (applying Title VII administrative exhaustion requirements to ADEA claims).  Such a charge must be filed within "three hundred days after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1); *accord* 29 U.S.C. § 626(d)(1)(B).  If the alleged unlawful incident occurs outside the 300-day window, a plaintiff will "lose the ability to recover for it."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002).

"The EEOC charging period is triggered when a discrete unlawful practice takes place," such as when a discriminatory decision is "made and communicated" to the plaintiff.  *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 628-29 (2007), *superseded on other grounds by statute*, Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2 (Jan. 29, 2009) (amending 42 U.S.C. § 2000e-5(e)).  "Discrete acts such as

---

[4]The parties combine plaintiff's claims related to race, gender, and age into a single analysis.  After review of these claims, the Court has determined that it does not need to decide which discriminatory acts relate to race, which relate to gender, which relate to age, or which relate to any combination of the three and therefore will analyze plaintiff's claims in the same manner as the parties.

termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.

Each incident of discrimination and each retaliatory adverse employment decision

constitutes a separate actionable 'unlawful employment practice.'" *Morgan*, 536 U.S. at

114. As a result, an EEOC charge covers only those discrete acts that occurred within

the appropriate time period. *Id.* Although a plaintiff may allege that numerous

discriminatory or retaliatory acts occurred throughout his or her term of employment,

"only incidents that took place within the timely filing period are actionable." *Id.*

Defendants argue that the "only adverse employment action in Mr. McDonald's

complaint that occurred on or after July 2, 2012 is his termination, which occurred in

January of 2012." Docket No. 25 at 6-7. Plaintiff asserts that the District placing a "do

not rehire" flag on plaintiff's personnel file also constitutes a discrete employment

action. Docket No. 30 at 4. However, plaintiff does not identify any other discrete acts

that occurred within the 300-day window and none are apparent.[5] Rather, plaintiff

argues that, because he has alleged a pattern and practice of adverse actions, the

continuing violation doctrine should be applied to his Title VII and ADEA claims to

render actionable any conduct taking place outside the 300-day window. Docket No. 30

---

[5]Defendants note that the complaint's allegation that, "[o]n June 30, 2012, Defendant Giron recommended the dismissal of Plaintiff," Docket No. 1 at 16, ¶ 62, contains a typographical error and should instead state that Ms. Giron recommended termination on June 30, 2011. Docket No. 25 at 5 n.1. Defendants reason that "the recommendation for Mr. McDonald's dismissal could not have come after his termination in January 2012." Docket No. 25 at 5 n.1. Plaintiff's brief does not mention this discrepancy or otherwise disagree with defendants' analysis. And, although the Court does not consider evidence outside the complaint in resolving defendants' motion to dismiss, the record supports defendants' interpretation of the complaint. *See* Docket No. 58-6 at 1. The Court will construe the complaint as alleging that, on June 30, 2011, Ms. Giron recommended that plaintiff be terminated.

at 5.[6]   In support of his argument, plaintiff cites, *inter alia*, *Bruno v. W. Elec. Co.*, 829 F.2d 957, 961 (10th Cir. 1987), a case which upheld a district court's ruling that the plaintiff's ADEA claims were timely pursuant to the continuing violation doctrine.  The court described the continuing violation doctrine as applying to "a series of related acts, one or more of which falls within the limitations period, *or* the maintenance of a discriminatory system both before and during the [limitations] period."  *Id.* at 961 (quotations omitted); *see also* Docket No. 30 at 5 (citing *Furr v. AT & T Techs., Inc.*, 824 F.2d 1537, 1543 (10th Cir. 1987) ("claim of age discrimination, however, may be based on a continuing policy and practice of discrimination that began before the statutory filing period").

Plaintiff's argument is unpersuasive.  In *Morgan*, the Supreme Court held that the continuing violation doctrine did not apply to discriminatory and retaliatory adverse employment decisions.  536 U.S. at 114.  In so doing, the Court held that discrete discriminatory acts occurring outside the 300-day window are not actionable even when such acts "are related to acts alleged in timely filed charges."  *Id.* at 113.  The Court was careful to distinguish "discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" from hostile work environment claims, which are composed of "a series of separate acts that collectively constitute one 'unlawful employment practice.'"  *Id.* at 117.  The Supreme Court held that, in the latter case, "the employee need only file a charge within . . . 300 days of any act that is part of the

---

[6]Plaintiff's allegation that "the administrative prerequisites for filing this action have been met" is conclusory and not entitled to the presumption of truth.  *See Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012).

hostile work environment." *Id.* at 118.

Although it does not appear that *Bruno* and *Furr* have been explicitly overruled, the Tenth Circuit held that "*Morgan* implicitly overturns prior Tenth Circuit law in that plaintiffs are now expressly precluded from establishing a continuing violation exception for alleged discrete acts of discrimination occurring prior to the limitations period, even if sufficiently related to those acts occurring within the limitations period." *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1185 (10th Cir. 2003). "This remains true even if the discrete act was part of a company-wide or systemic policy." *Id.*; *see also Morgan*, 536 U.S. at 111 ("We have repeatedly interpreted the term 'practice' to apply to a discrete act or single 'occurrence,' even when it has a connection to other acts."). Although plaintiff argues that "successive poor evaluations and repeated false disciplinary memos" evidence the District's discriminatory policy, Docket No. 30 at 6, such acts appear to be discrete acts of discrimination. Plaintiff does not argue otherwise or direct the Court to additional conduct that does not fall into that category. In light of *Morgan* and corresponding Tenth Circuit precedent, the Court declines to apply the continuing violation doctrine to plaintiff's Title VII and ADEA claims. Because plaintiff's charge of discrimination was filed on April 27, 2012, plaintiff's Title VII and ADEA claims are therefore dismissed to the extent they are based upon allegedly unlawful employment practices that took place prior to July 2, 2011.[7] Plaintiff may, however, proceed on his Title VII and ADA claims to the extent such claims are based upon unlawful

---

[7]Plaintiff is not, however, barred from using acts occurring before July 2, 2011 "as background evidence" in support of the timely aspects of his claim. *Morgan*, 536 U.S. 113.

employment practices occurring on or after July 2, 2011.  Defendants' motion to dismiss on this issue is granted.

### D.  First Amendment Claim

Defendants argue that, with the exception of plaintiff's termination, plaintiff's claim for retaliation in violation of the First Amendment is barred by the statute of limitations.  Docket No. 25 at 9.  The parties agree that, pursuant to Colorado law, plaintiff's First Amendment claim is subject to a two-year statute of limitations.  *See* Colo. Rev. Stat. § 13-80-102(1)(g) ("All actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and "regardless of the theory upon which suit is brought . . . must be commenced within two years."); *see also Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) ("the statute of limitations for § 1983 actions brought in Colorado is two years from the time the cause of action accrued"); *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 557 (10th Cir. 1999) ("State statutes of limitations applicable to general personal injury claims supply the limitations periods for [42 U.S.C.] § 1983 claims.").  Federal law, however, "governs the time of accrual of § 1983 claims."  *Beck*, 195 F.3d at 557.  Generally, a § 1983 claim "accrue[s] when [plaintiff] knew or should have known that his constitutional rights had allegedly been violated."  *Parkhurst v. Lampert*, 264 F. App'x 748, 749 (10th Cir. 2008) (unpublished) (citing *Beck*, 195 F.3d at 557).  In the First Amendment retaliation context, a claim accrues "when the plaintiff knows or has reason to know of the injury that is the basis for the action."  *Mata v. Anderson*, 635 F.3d 1250, 1252 (10th Cir. 2011).

Plaintiff filed this case on November 21, 2013; thus, plaintiff's claim is limited to those injuries that plaintiff knew of or had reason to know of on or after November 21, 2011. Plaintiff does not argue otherwise. Defendants concede that plaintiff's First Amendment claim is not barred by the statute of limitations to the extent the claim is based upon his termination. Plaintiff argues that "[t]he injury, Plaintiff's termination, occurred on January 24, 2012," Docket No. 30 at 7, but does not explicitly identify any other adverse employment actions that took place within the statute of limitations.[8] Thus, in the absence of argument to the contrary, the Court concludes that the District's termination of plaintiff's employment is the only adverse employment act falling within the statute of limitations. *See Workman v. Jordan*, 32 F.3d 475, 482 (10th Cir. 1994) (holding that allegedly retaliatory poor employment evaluation "occurred more than three years before the suit was filed [and] is therefore time barred"). Defendants' motion to dismiss on this issue is granted.

---

[8]Plaintiff suggests that the conduct alleged in paragraphs 57 and 63 may have been retaliatory. *Id.* at 7 n.3. However, paragraph 57 of the complaint states that Dr. Greer assigned plaintiff to Fairview Elementary and Place Bridge Academy for the 2010-2011 school year, Docket No. 1 at 15, ¶ 57, an act which plainly occurred outside the statute of limitations. Paragraph 63 of the complaint states that, upon learning of "the intent to dismiss Plaintiff, the principal of Place Bridge Academy asked to have Plaintiff assigned to her building," a request which Dr. Greer and the District refused. *Id.* at 16, ¶¶ 62-63. Plaintiff does not argue that the complaint should be interpreted as alleging that this action on the part of Dr. Greer and the District occurred within the statute of limitations for this claim, and the Court is unconvinced that the complaint's allegations compel such a conclusion. Similarly, plaintiff does not argue that the District's placement of a "do not rehire" flag in plaintiff's personnel file fell within the statute of limitations. *See id.* at 16, ¶ 63. However, the question of whether the conduct alleged in paragraph 63 is time-barred is largely moot because, as discussed below, plaintiff does not assert this conduct in response to defendant's motion for summary judgment and, as a result, the Court has no basis for concluding that a genuine dispute of fact exists as to such conduct.

For reasons discussed below, the remainder of defendant's motion to dismiss is denied as moot.

## II. MOTION FOR SUMMARY JUDGMENT

### A. Background[9]

Plaintiff is an African American male who has been over the age of 60 at all times relevant. He was employed with the District as a social worker from 1989 to 2012. Docket No. 58 at 2, ¶ 1; *id.* at 8, ¶ 24. His job duties included direct and indirect services to families and students, supporting administrators, serving as an evaluator for Individualized Education Programs, implementing functional behavior analyses, providing training for school staff, and public speaking regarding "the needs of the black community." *Id.* at 2-3, ¶ 6; Docket No. 64 at 2, ¶ 6. The conditions of his employment were governed by a collective bargaining agreement (the "CBA"). Docket No. 58 at 2, ¶ 2; *see also* Docket No. 58-3. Prior to the 2008-2009 school year, plaintiff worked at various schools within the District, Docket No. 58 at 3, ¶ 7, and his evaluations were overwhelmingly positive. Docket No. 64 at 9, ¶ 27.

During the 2009-2010 school year, Dr. Greer assigned plaintiff to Fairview, Place Bridge, and PS1 Charter School. Docket No. 58 at 4, ¶ 12. During that time, Ms. Giron was the principal at Fairview and placed plaintiff on special evaluation, which showed that plaintiff's performance was unsatisfactory. *Id.* Plaintiff claims that the special evaluation was intended to "document him for termination on false pretenses," Docket No. 64 at 4, ¶ 12, and complained to Dr. Greer regarding Ms. Giron's disciplinary

---

[9]The following facts are undisputed unless otherwise indicated.

actions.  *Id.* at 10, ¶ 35.  Plaintiff asserts that, in the fall of 2009, Dr. Greer determined

that plaintiff "did not belong anywhere in DPS."  Docket No. 64 at 13.  In support of this

assertion, plaintiff cites an email from Dr. Greer sent to three District staff members.

Docket No. 66-3.  After receiving emails raising concerns about plaintiff's performance,

Dr. Greer stated, "I too am concerned about him working in any school."  *Id.* at 1.  In

April 2010, plaintiff filed a grievance, claiming that he was being mis-evaluated,

harassed, micro-managed, and discriminated against.  Docket No. 64 at 10, ¶ 38.

During the 2010-2011 school year, plaintiff worked at Fairview and Place Bridge,

but spent most of his time at Fairview.  Docket No. 58 at 4, ¶ 13.  Defendants claim

that, as a result of his unsatisfactory evaluation during the 2009-2010 school year, Ms.

Giron placed plaintiff on a remediation plan pursuant to the CBA.  *Id.*  Plaintiff failed to

improve his performance and Ms. Giron subsequently placed plaintiff on paid

administrative leave and began dismissal procedures.  *Id.*; *see also* Docket No. 58-2 at

2, ¶¶ 7-9.  Plaintiff disputes that the remediation plan had any legitimate purpose,

claiming that the special evaluation and remediation plan were implemented solely for

the purpose of facilitating plaintiff's termination.  Docket No. 64 at 4, ¶ 13.  Following his

placement on administrative leave, plaintiff filed a grievance under the CBA, claiming,

among other things, that the evaluation process to which he was subjected violated the

CBA, that Ms. Giron penalized him for being unable to complete an excessively

demanding workload, and that Ms. Giron issued him unwarranted reprimands in order

to "bolster a predetermined intent to force me out of the district."  Docket No. 58-4 at 1.

During the 2008-2009 and prior school years, plaintiff spoke at Black Educator

Advisory Committee and church meetings regarding how DPS was not meeting the

needs of African American youth.  Docket No. 58 at 3, ¶ 9.  During that time he also

spoke about the lack of African American teachers at DPS.  *Id.*  In the spring or summer

of 2009, plaintiff participated in a television interview and expressed his opinion that the

District was discriminating against black youth.  Docket No. 66 at 9, ¶ 21.  Plaintiff

asserts that he engaged in several additional instances of protected speech throughout

his employment with the District, but does not indicate when such speech occurred.

Plaintiff claims to have spoken as a member of the black community against DPS.  *Id.*

As a member of the Black Educator Advisory Committee, plaintiff helped draft a letter

from the committee to the District stating that district was "hypocritical in its service to

our community."  *Id.*  During monthly department meetings with Dr. Greer and others,

plaintiff voiced concerns over the placement of black male students into Significant

Identifiable Emotional Behavioral Disorders special education programs.  *Id.* at 9-10, ¶

24.

DPS Policy GDQD-R governed plaintiff's termination.  Licensed social workers

such as plaintiff can be terminated for "just cause."  Docket No. 58-5 at 4.  The

procedure for termination an employee is as follows.  First, the employee is provided

with a written notice of recommendation to dismiss, which must list the reasons for the

recommendation.  Second, the employee is then entitled to a pre-termination hearing

before a designee of the Superintendent where the employee can present information

regarding the dismissal recommendation.  If the employee chooses not to attend the

hearing, the employee is deemed terminated.  Third, if, after the pre-termination

hearing, the Superintendent's designee concludes that termination is appropriate, the

employee is provided a post-termination hearing before an impartial hearing officer

("IHO").  At the post-termination hearing, both parties have the right to present evidence.  Costs of the hearing are paid by the District.  The IHO makes findings as to whether any grounds for dismissal are present and, if so, must recommend termination.  Fourth, after the IHO makes its findings, the School Board must issue a final decision on whether to affirm or reverse the dismissal.  *Id.* at 4-5.

On June 30, 2011, Ms. Giron issued a written recommendation that plaintiff's employment be terminated (the "dismissal recommendation") to Superintendent of Schools Tom Boasberg and Chief Human Resources Officer Shayne Spalten.  Docket No. 58-6 at 1.  Plaintiff was issued a letter on June 30, 2011 notifying him that he had an opportunity to respond to the dismissal recommendation.  Docket No. 58-7 at 1.  On July 8, 2011, plaintiff participated in a hearing before District Hearing Officer Lee Renfrow, where plaintiff presented numerous concerns regarding the dismissal recommendation.  *Id.*  In an August 22, 2011 written decision, Mr. Renfrow concluded that just cause existed for plaintiff's termination.  *Id.* at 5.  Plaintiff disagrees with Mr. Renfrow's conclusion and claims that the hearing was "an exercise in futility."  *See* Docket No. 64 at 5, ¶ 17.  During his deposition plaintiff testified that he felt Mr. Renfrow discriminated against him and, when asked to explain why, plaintiff responded:

> I thought that from a hearing officer, that – given the years of my service and relatively clean record, that this person would give me a hearing and at least have a little more empathy with how I saw what was happening to me and not be so inflexible as to see everything through what I considered the narrow eye of DPS.

Docket No. 58-1 at 83-84, pp. 294:18-295:10.

Plaintiff and his attorney requested a hearing before the IHO.  The hearing was conducted over the course of six days in October and November 2011 before IHO

14

Marshall A. Snider, who was selected by mutual agreement of the parties.  Docket No. 58-8 at 1; Docket No. 58 at 5, ¶ 18.  On December 13, 2011, the IHO issued a 42-page written decision.  Docket No. 58-8.  The IHO agreed with plaintiff that some of the charges against him were minor infractions, noting that once Ms. Giron "became concerned with McDonald's performance Giron did not miss a chance to be critical."  *Id.* at 40.  However, the IHO found that, although Ms. Giron may have placed demands on plaintiff that he was unaccustomed to, her requirements were not unreasonable.  *Id.*  As a result, the IHO concluded that the District had established many, but not all, of the grounds of dismissal alleged in the dismissal recommendation, stating

> Several of McDonald's acts of insubordination are particularly serious and would justify his dismissal under a just cause standard even if no other charges had been sustained.  He willfully did not file some truancy cases, and willfully did not perform functional behavior assessments on four kindergarten students, because he disagreed with Giron regarding the necessity of these actions.  In addition, he did not feel that he was required to prepare [Student Growth Objectives ("SGOs")] even if directed to do so, such that his half-hearted attempts at writing SGOs amounted to willful disobedience.  Finally, he did not provide written schedules requested by Giron because he did not see the need to do so or because he thought they would at times not be accurate.  In each of these cases McDonald substituted his judgment for Giron's.

> *             *             *

> In addition to acts of insubordination that by themselves warrant a decision to dismiss McDonald, he was unwilling or unable to elevate his game in a new environment and incorporate new practices that might improve his performance and that of his school.

*Id.* at 41.  The IHO found that the District established just cause for dismissal and recommended the termination of Mr. McDonald's employment.  *Id.* at 42.

Plaintiff does not dispute many of the IHO's factual findings regarding his performance.  For example, plaintiff does not dispute that he failed to perform functional

behavior assessments on four kindergarten students as Ms. Giron directed.  Docket No. 64 at 6, ¶ 19.v.  Rather, plaintiff argues that Ms. Giron's directives were unreasonable and, as a result, that the IHO inaccurately concluded that "just cause" existed for plaintiff's termination.  *Id.*; *id.* at 7, ¶ 20; *see also, e.g.*, *id.* at 6, ¶ 19.vi-ix.  Plaintiff, however, concedes that the IHO did not engage in any discriminatory conduct towards plaintiff.  Docket No. 58 at 8, ¶ 23; Docket No. 64 at 8, ¶ 23; Docket No. 58-1 at 85, p.296:2-13.

On January 19, 2012, the School Board reviewed the IHO's decision, concluding that it contained sufficient facts upon which to determine whether to continue plaintiff's employment.  Docket No. 58-9 at 1-2.  The School Board accepted and adopted the IHO's findings of fact and concluded that the findings established "insubordination, neglect of duty, incompetence, unsatisfactory performance, and other good and just cause for dismissal, and that dismissal is warranted."  *Id.*  As a result, the School Board terminated plaintiff's employment with the District.  *Id.*  At his deposition, plaintiff testified that he could not recall any School Board member engaging in discriminatory conduct towards him.  Docket No. 58-1 at 85-86, pp. 296:21-297:13.

On April 27, 2012, plaintiff filed a charge of discrimination with the EEOC. Docket No. 58 at 8, ¶ 26.

**B.  Standard of Review**

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson*

16

*v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

However, "[w]hen, as in this case, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Bausman v. Interstate Brands Corp.,* 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir. 1998)) (internal quotation marks omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial."  *Celotex,* 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Bausman,* 252 F.3d at 1115 (citing *Hulsey v. Kmart,*

*Inc.,* 43 F.3d 555, 557 (10th Cir.1994)).  "In applying this standard, we view all facts and any reasonable inferences that might be drawn from them in the light most favorable to the nonmoving party."  *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).

### C.  Title VII and ADEA Claims

When there is no direct evidence of discrimination, a plaintiff must rely on the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973), to show a defendant's discriminatory animus.  *See Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (a plaintiff can prove discrimination "by relying on the three-part *McDonnell Douglas* framework") (internal quotation marks omitted). Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination.  *Id.*  In order to make a prima facie case of disparate treatment, a plaintiff must show three elements: (1) that he belonged to a protected class; (2) that he suffered an adverse employment action; and (3) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011).[10]  If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant employer to state a legitimate, nondiscriminatory reason for its adverse employment action.  *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1321 (10th Cir. 2004).  If the defendant produces a legitimate, nondiscriminatory reason, then the court

---

[10]The Tenth Circuit has noted that the prima facie case is sometimes articulated differently depending on the specific claim before the court.  *See id.* at 1095 n.1; *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1307 (10th Cir. 2005).

must grant the defendant summary judgment unless the plaintiff can show a genuine issue of material fact as to whether the stated reason for the adverse action is pretextual. *Id.* However, "[r]egardless of whether [courts] analyze the plaintiff's evidence in reference to the prima facie case or the business justification versus pretext inquiry, . . . if the court correctly concludes that the evidence of discrimination/pretext fails as a matter of law, summary judgment for the defendant is the proper result." *See E.E.O.C. v. PVNF, LLC*, 487 F.3d 790, 800 n.5 (10th Cir. 2007) (internal citations and quotations omitted). The parties agree that the *McDonnell Douglas* burden shifting framework applies to plaintiff's Title VII and ADEA claims.

As discussed above, plaintiff's Title VII and ADEA claims are limited to those adverse employment actions that took place on or after July 2, 2011. Other than his January 19, 2012 termination by the School Board, plaintiff does not identify what, if any, actionable unlawful conduct took place after July 2, 2011 and no such conduct is apparent from the record. Thus, the Court will consider whether a genuine dispute of material fact exists as to whether race, sex, and/or age was a "motivating factor," *see* 42 U.S.C. § 2000e-2(m), or had a "determinative influence" in the decision to terminate plaintiff's employment. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993).[11]

---

[11]Plaintiff's complaint alleges that "the District imposed a 'do not rehire' flag on Plaintiff's personnel file and other District records," Docket No. 1 at 16, ¶ 63, but plaintiff's response brief does not mention this allegation or identify evidence in support of it. The Final Pretrial Order, which by its terms incorporates all prior pleadings, is also silent on this issue. *See* Docket No. 60 at 2-3, 10. Thus, to the extent this allegation was a basis for plaintiff's Title VII and ADEA claims, plaintiff appears to have abandoned it. Moreover, plaintiff does not indicate who made the decision to place a "do not rehire flag" in plaintiff's personnel file and when the decision was made. As a result, it is impossible determine whether discrimination played a role in that decision. Moreover, plaintiff does not identify any discrete discriminatory employment

For purposes of resolving this motion, the Court elects to assume, without deciding, that plaintiff has established a prima facie case of discrimination. *See PVNF, LLC*, 487 F.3d at 800 n.5. The District produces a legitimate, nondiscriminatory reason for its termination of plaintiff's employment, namely, the instances of "insubordination, neglect of duty, unsatisfactory performance, and other good and just cause" identified in the IHO's decision. Docket No. 58 at 12. Because these are reasons that are not facially prohibited, the District has satisfied its burden to produce legitimate, non-discriminatory reasons for terminating plaintiff's employment. *See Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1218 (10th Cir. 2003).

The burden therefore shifts back to plaintiff to show that the reasons set forth in the IHO's decision and adopted by the School Board are pretext for unlawful discrimination. To demonstrate pretext, plaintiff must produce evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for" its termination decision. *See Crowe v. ADT Security Servs., Inc.*, 649 F.3d 1189, 1196 (10th Cir. 2011). Plaintiff may also defeat summary judgment by showing that there is a genuine dispute of material fact as to whether defendant's explanations for terminating his employment are pretextual. *See Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1318 (10th Cir. 2006).

---

decisions that were made prior to July 2, 2011, but not communicated to plaintiff until after July 2, 2011. *See Ledbetter*, 550 U.S. at 628-29. The Court finds no basis for concluding that any such incidents exist. *See* Docket No. 58-7 at 1 (stating that plaintiff was issued a letter "on June 30, 2011 notifying Mr. McDonald that he had an opportunity to respond to a dismissal recommendation made by Norma Giron to the Superintendent on that same date").

Plaintiff does not directly attack the School Board's decision to terminate his employment.  Rather, plaintiff asserts that, during the 2009-2010 and 2010-2011 school years, Dr. Greer, Ms. Giron, and other District employees subjected him to discriminatory treatment, including issuing unwarranted disciplinary warnings and memos, making unreasonable demands, refusing to recognize or record his positive accomplishments, and, in Dr. Greer's case, raising concerns about plaintiff "working in any school."  Docket No. 64 at 13-14; Docket No. 66-3 at 1.  Plaintiff further asserts that District officials "gave no weight whatsoever to Plaintiff's allegations of discrimination, and harassment, and failed to address his complaints of unfair treatment."  Docket No. 64 at 14.  Plaintiff asserts that, until the 2009-2010 school year, his performance evaluations were positive, *id.* at 13, that he was one of only two African American male social workers employed by the District; *id.* at 14, and that Dr. Greer's and Ms. Giron's treatment of him was generally filled with "disturbing procedural irregularities and subjective criteria."  *Id.* at 17.[12]  Plaintiff also attaches an affidavit from District teacher Dr. Annette Sills-Brown, who states that when attending a principal's meeting in January 2009, District Chief Human Resources Officer Shayne Spalten told meeting attendees, "I will help you get rid of those people you have had for a long time."  Docket No. 66-7 at 2, ¶ 5.[13]

---

[12]Plaintiff's assertion that his evaluations were written by a "ghost evaluator" is unsupported by citation to the record and, as a result, is insufficient to create a genuine dispute of material fact.  *See* Docket No. 64 at 11, ¶¶ 41-43.

[13]For the reasons discussed below, the Court need not consider defendants' argument that Dr. Sills-Brown's affidavit should be stricken for violation of Fed. R. Civ. P. 26(a).

Plaintiff fails to establish a genuine dispute of material fact as to pretext for multiple reasons.  First, plaintiff's focus on the conduct of District employees from 2009 to June 30, 2011 is irrelevant because plaintiff has failed to establish a connection between such conduct and the School Board's decision to terminate his employment. Plaintiff does not dispute that the School Board possessed the final authority to terminate plaintiff's employment.  Plaintiff does not produce any evidence upon which to conclude that Dr. Greer, Ms. Giron, or any of the other District employees plaintiff accuses of mistreatment were school board members or played a role in the School Board's decision to terminate plaintiff.

Moreover, plaintiff admits that he could not recall any School Board member engaging in discriminatory conduct towards him.  Docket No. 58-1 at 85-86, pp. 296:21-297:13.  Plaintiff does not articulate any legal theory, such as "cat's paw" or subordinate bias liability, that would allow the District to be held liable in spite of the School Board's lack of "discriminatory intent," *cf. E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 485 (10th Cir. 2006),[14]  and it is not incumbent upon the Court to provide one.  Thus, plaintiff fails to provide evidence upon which a reasonable juror could conclude that the School Board's decision to terminate his employment was motivated by unlawful discrimination.  This is, by itself, a sufficient basis to grant summary judgment in the District's favor.

---

[14]In employment discrimination law, the "cat's paw" theory can apply when a biased subordinate who lacks decisionmaking authority uses the formal decisionmaker "as a dupe in a deliberate scheme to trigger a discriminatory employment action."  *Id*. at 484 (citation omitted).  "The 'rubber stamp' doctrine has a more obvious etymology, and refers to a situation in which a decisionmaker gives perfunctory approval for an adverse employment action explicitly recommended by a biased subordinate."  *Id.*

Second, in assessing pretext, the "relevant inquiry is not whether [the employer's] proffered reasons were wise, fair, or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs." *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004) (quotations omitted).  Where, as here, decisionmakers rely on the investigative findings of others in making the termination decision, pretext is assessed not by determining the factual accuracy of such findings, but "by examining the facts as they appear to the person[s] making the decision to terminate" and whether the decisionmakers "reasonably 'perceived'" that the information they relied upon was accurate.  *See Tesh v. U.S. Postal Serv.*, 349 F.3d 1270, 1273 (10th Cir. 2003); *see also Hysten v. Burlington N. Santa Fe Ry. Co.*, 415 F. App'x 897, 905 (10th Cir. 2011) ("Mr. Hysten presents no evidence demonstrating that [the decisionmakers] did anything other than read the transcript of the investigative hearing and honestly conclude – as one reasonably might – that Mr. Hysten threatened another employee with violence.  Even assuming, *arguendo*, that Mr. Hysten *did not* make these threats, a reasonable person *could have* read the transcripts and concluded that he did.").  Although plaintiff disputes the accuracy of many of the IHO's findings, plaintiff does not argue that the School Board should have perceived any of the claimed inaccuracies or that it was unreasonable for the School Board to conclude that the IHO's findings established "insubordination, neglect of duty, incompetence, unsatisfactory performance, and other good and just cause for dismissal, and that dismissal is warranted."  Docket No. 58-9 at 2.[15]  Plaintiff does not identify evidence

---

[15]Plaintiff argues that the IHO hearing does not have preclusive effect or control the facts or law of this case.  Docket No. 64 at 15.  Plaintiff is correct that "unreviewed

suggesting that the School Board lacked an honest belief in the accuracy of the IHO's findings or that the School Board failed to act in good faith when it reviewed and adopted the IHO's findings.  Absent such evidence, courts cannot "second guess[] employers' business judgments."  *See Jones v. Barnhart*, 349 F.3d 1260, 1267 (10th Cir. 2003) (quotations omitted).

Even if plaintiff could establish that the District's proffered reasons were untrue, sufficient evidence must exist for the factfinder to conclude "that *discrimination was a determinative factor* in the employer's actions."  *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (emphasis in original) (quoting *Miller v. Eby Realty Grp., LLC*, 396 F.3d 1105, 1111 (10th Cir. 2005)).  Because plaintiff admits that the School Board and IHO did not engage in discriminatory conduct towards plaintiff, Docket No. 58-1 at 85, p. 296:2-13, plaintiff fails to provide any basis for concluding that discrimination was a determinative factor in the School Board's decision.

For the foregoing reasons, plaintiff has failed to present sufficient evidence upon which a reasonable juror could conclude that the District's proffered reasons for terminating plaintiff were pretextual.  As a result, defendants' motion for summary judgment on plaintiff's Title VII and ADEA claims will be granted.

---

administrative proceedings do not have preclusive effect by collateral estoppel in Title VII cases."  *Long v. Laramie Cnty. Cmty. Coll. Dist.*, 840 F.2d 743, 751 (10th Cir. 1988). However, the Court does not assign the IHO's decision preclusive effect in resolving defendants' motion.  Rather, the IHO's decision was the information relied upon by the School Board in rendering its decision and is therefore relevant in determining whether the School Board honestly believed in the accuracy of the IHO's decision and acted in good faith upon those beliefs.  *See Rivera*, 365 F.3d at 924-25.

**D.  First Amendment Claim**

Defendants argue that plaintiff fails to establish his First Amendment retaliation claim.  Docket No. 58 at 13.  As discussed above, the statute of limitations limits plaintiff's First Amendment claim to those adverse employment actions occurring on or after November 21, 2011.  With the exception of his termination, plaintiff does not indicate what, if any, additional retaliatory actions occurred on or after that date.  In the absence of argument to the contrary, the Court concludes plaintiff's First Amendment retaliation claim consists of a single cognizable adverse employment action, namely, the School Board's January 19, 2012 decision to terminate plaintiff's employment.

### 1.  Claim Against the District[16]

A government employer may not "condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression [under the First Amendment]."  *Morris v. City of Colo. Springs*, 666 F.3d 654, 660 (10th Cir. 2012) (quotations omitted).  In order to protect public employees' rights, the Tenth Circuit employs the *Garcetti/Pickering* test, which asks

> 1) whether the speech was made pursuant to an employee's official duties;
> (2) whether the speech was on a matter of public concern; (3) whether the
> government's interests, as employer, in promoting the efficiency of the public
> service are sufficient to outweigh the plaintiff's free speech interests; (4)

---

[16]A local governmental entity "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978) (footnote omitted).  The parties agree that the School Board's decision constitutes an official policy or custom.  *See Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (noting that "official policy or custom" may be shown by evidence of, among other things, decisions of employees with final policy-making authority or the ratification by a final decisionmaker of a subordinate's actions).

whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Id.* at 661 (quoting *Dixon*, 553 F.3d at 1302).  The first three prongs are considered questions of law and the last two prongs are questions of fact.  *Dixon*, 553 F.3d at 1302.  For purposes of resolving this motion, the Court assumes, but does not decide, that the first three prongs would be resolved in plaintiff's favor.  *Cf. Duvall v. Putnam City Sch. Dist., Indep. Sch. Dist. No. 1 of Okla. Cnty.*, 530 F. App'x 804, 815 (10th Cir. 2013) (unpublished) (resolving First Amendment retaliation claim under the fourth prong of the *Garcetti/Pickering* test).

Defendants argue that plaintiff fails to establish the fourth prong of the *Garcetti/Pickering* test because "there is no evidence that the Board members knew that McDonald engaged in *any* speech at issue."  Docket No. 58 at 15.  "An employer's knowledge of the protected speech, together with *close* temporal proximity between the speech and the challenged action, may be sufficiently probative of causation to withstand summary judgment."  *Maestas v. Segura*, 416 F.3d 1182, 1189 (10th Cir. 2005) (emphasis in original); *accord Duvall*, 530 F. App'x at 815.  Plaintiff responds to defendants' argument with the conclusory and unsupported assertion that his speech was "a motivating factor in Plaintiff's ill treatment and termination," Docket No. 64 at 18, which does not provide any basis upon which to conclude that the School Board was aware of plaintiff's protected conduct or that his protected conduct was a causal factor in his termination.  *See Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1025 (10th Cir. 1992) ("In the absence of such specific reference, we will not search the

record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury.").  The IHO's decision – on which the School Board relied – does not appear to mention any instances of plaintiff's protected conduct.  Moreover, it is unclear from the record the dates upon which plaintiff engaged in protected speech and which District employees had knowledge of what speech.  *See Hook v. Regents of Univ. of Cal.*, 394 F. App'x 522, 539 (10th Cir. 2010) (unpublished) ("Axiomatic to establishing causation in th[e First Amendment retaliation context] is proof that the employer knew of the employee's protected conduct."); *Dillon v. Twin Peaks Charter Acad.*, No. 99-cv-02462-CMA-BNB, 2009 WL 2982008, at *2 (D. Colo. Sep. 11, 2009) (ruling that, under *Garcetti/Pickering* test, plaintiff must establish that "employer knew about the plaintiff's protected activity before taking the adverse employment action").

Moreover, with respect to the fifth prong, defendants assert that, because the IHO and the School Board had no knowledge of plaintiff's protected speech, the School Board would have terminated plaintiff regardless of the protected conduct.  Docket No. 58 at 16.  Plaintiff fails to provide persuasive argument or evidence in response.  Thus, plaintiff has failed to create a genuine dispute of material fact with respect to the fourth and fifth prongs of the test.  Defendant is therefore entitled to summary judgment on plaintiff's First Amendment claim against the District.  Docket No. 58 at 15.[17]

---

[17]As discussed above, to the extent plaintiff continues to assert a claim that the District's decision to place a "do not rehire" flag in his personnel file was retaliatory, plaintiff fails to explain when the decision was made and who made it.  As a result, there is no evidence upon which to determine whether plaintiff's protected speech was a motivating factor in such a decision.  *See Dixon v. Kirkpartrick*, 553 F.3d 1294, 1302 (10th Cir. 2009).  Defendants are therefore entitled to summary judgment on this aspect

### 2. Claims Against Ms. Giron and Dr. Greer

Defendants argue that plaintiff fails to establish the fourth and fifth elements with respect to his claims against Ms. Giron and Dr. Greer. Docket No. 58 at 16.[18] However, in light of the Court's ruling on defendants' motion to dismiss, plaintiff's First Amendment claim is limited to adverse employment actions occurring on or after November 21, 2011. Plaintiff does not negate that he had reason to know of Ms. Giron's and/or Dr. Greer's alleged retaliatory acts before November 21, 2011, and any contrary claim would find no support in the record. *See* Docket No. 58-7 at 1. Moreover, plaintiff provides no evidence upon which to conclude that Ms. Giron and/or Dr. Greer took an adverse employment action against plaintiff within the statute of limitations. To the contrary, the record indicates that, after November 21, 2011, the acts that took place were (1) the IHO issuing his decision on December 13, 2011, Docket No. 58-8 at 42, and (2), the School Board voting to terminate plaintiff's employment on January 19, 2012. Docket No. 58-9. There is no evidence that Ms. Giron or Dr. Greer personally participated in either action. *See Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) ("[p]ersonal participation is an essential allegation in a § 1983 claim"). Thus, plaintiff fails to identify any evidence suggesting that Ms. Giron or

---

of plaintiff's First Amendment claim.

[18]Because the Court disposes of plaintiff's claims against Ms. Giron and Dr. Greer on statute of limitations grounds, the Court need not consider whether the *Garcetti/Pickering* test applies to these claims. *See Worrell v. Henry*, 219 F.3d 1197, 1209-10 (10th Cir. 2000) (noting that the *Garcetti/Pickering* test is generally applicable only to public entities and public employees "who have the authority to make hiring and firing decisions and take other personnel actions" but does not apply "to public officials outside the employing agency").

Dr. Greer took an adverse employment action against plaintiff within the statute of limitations.  As a result, defendants are entitled to summary judgment on plaintiff's First Amendment claims against Ms. Giron and Dr. Greer.

### E.  Remaining Claims

Having dismissed plaintiff's claims arising under federal law, the Court next addresses the issue of whether it should exercise supplemental jurisdiction over plaintiff's remaining claims, which are based upon state law.  While courts may exercise supplemental jurisdiction over state law claims if there is otherwise a jurisdictional basis for doing so, 28 U.S.C. § 1367(c)(3) states that a court may decline to exercise jurisdiction over such claims if "the district court has dismissed all claims over which it has original jurisdiction."  When § 1367(c)(3) is implicated in the Tenth Circuit, courts are advised to dismiss pendent state law claims "'absent compelling reasons to the contrary.'"  *Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010) (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995) (reversing the district court's grant of summary judgment on state law claims); *Endris v. Sheridan Cnty. Police Dep't*, 415 F. App'x 34, 36 (10th Cir. 2011) ("any state-law claims for assault and battery or mental and emotional injury were inappropriate subjects for the exercise of pendent jurisdiction where all federal claims had been dismissed").  *But see Henderson v. Nat'l R.R. Passenger Corp.*, 412 F. App'x 74, 79 (10th Cir. 2011) (finding no abuse of discretion in trial court's decision to retain jurisdiction over state law claims after plaintiff voluntarily dismissed claims arising under federal law).  Finding no compelling reason here to retain jurisdiction, the Court will dismiss plaintiff's remaining claims without prejudice.

*See* Colo. Rev. Stat. § 13-80-111 (permitting claims properly commenced within the statute of limitations to be re-filed if involuntarily dismissed because of lack of jurisdiction); *Dalal v. Alliant Techsystems, Inc.*, 934 P.2d 830, 834 (Colo. App. 1996) (interpreting 28 U.S.C. § 1367(d) as tolling the statute of limitations while claim is pending in federal court); *see also City of Los Angeles v. Cnty. of Kern*, 328 P.3d 56, 65 (Cal. 2014) (noting that interpretations of § 1367(d) vary between jurisdictions).

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendants' Motion to Dismiss [Docket No. 25] and the Motion for Summary Judgment [Docket No. 58] are **GRANTED** in part and **DENIED** in part as indicated in this order.  It is further

**ORDERED** that plaintiff's first, second, and third claims for relief are **DISMISSED** with prejudice.  It is further

**ORDERED** that plaintiff's fourth and fifth claims for relief are **DISMISSED** without prejudice.  It is further

**ORDERED** that, within 14 days of the entry of judgment, defendants may have their costs by filing a bill of costs with the Clerk of the Court.  It is further

**ORDERED** that this case is dismissed in its entirety.

DATED March 17, 2015.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge